UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Leslie Wilson, | Civ. No. 15-1768 (PAM/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Wells Fargo Bank, N.A., and US Bank, National Association, | |
| Defendants. | |

This matter is before the Court on the Defendants' Motion for Summary Judgment. For the reasons that follow, the Motion is granted.

**BACKGROUND**

Plaintiff Leslie Wilson and her husband DeAundres Wilson bought their condominium in Minneapolis in 2000. They refinanced their mortgage in 2003; this refinanced mortgage is the relevant mortgage for purposes of this lawsuit. (Defs.' App. at 1-11.) Defendant Wells Fargo Bank was the initial mortgagor, but the mortgage was eventually assigned to U.S. Bank, also a Defendant here. (Id. at 12-15.) Wells Fargo remained the servicer on the loan, however, even after the assignment to U.S. Bank. Because the statutory provisions that form the basis of Plaintiff's claims apply to a mortgage servicer, the Court will refer to Defendants as "Wells Fargo."

The Wilsons separated in 2004 and Mr. Wilson moved out of the home. (Id. at 116-17.) The couple has never divorced or legally separated, however, and Mr. Wilson remains on the mortgage. The couple have a son together for whom Mr. Wilson pays

child support.

The events giving rise to the instant matter are not the first time the Wilsons have modified their mortgage loan. After encountering difficulty making their mortgage payments, they entered into loan modifications with Wells Fargo in both 2008 and 2010 that added their late payments to the mortgage's principal and extended the repayment period. (Id. at 31-32; 37-41.) In 2014, they again defaulted on the mortgage. (Id. at 42-45.)

Wells Fargo informed the Wilsons in early May 2014 that the mortgage would be referred for foreclosure and asked them to contact Wells Fargo for assistance. (Id. at 46-48.) When the Wilsons did not respond to this letter, Wells Fargo instituted foreclosure proceedings on June 30, 2014. (Id. at 49-50.) The sheriff's sale was scheduled for September 12, and the Wilsons were informed of this date in a letter dated July 22. (Id. at 51-52.)

Mrs. Wilson finally contacted Wells Fargo in early August asking for help with her mortgage. On August 4, Wells Fargo acknowledged that Mrs. Wilson had submitted documents apparently seeking a loan modification. (Id. at 53-54.) The next day, Wells Fargo wrote to the Wilsons outlining what documents were necessary to complete a loan-modification application. (Id. at 55-66.) Wells Fargo told the Wilsons that they were required to send the documents to Wells Fargo by September 4. (Id. at 55.)

Although he had participated in the loan-modification applications in 2008 and 2010, Mr. Wilson was reluctant to participate in Mrs. Wilson's application in 2014. (Id. at

123-24.) Thus, he did not submit any of the documentation Wells Fargo requested. Wells Fargo repeatedly asked Mrs. Wilson for Mr. Wilson's information, but he was unwilling to provide it. In an August 21 letter, Wells Fargo explained what was missing from the application and that it needed to receive the information by September 5. (Id. at 67-87.) Wells Fargo wrote to the Wilsons again on August 26, reiterating that documents necessary for their application were still missing. (Id. at 88-97.) This time, however, the letter asked the Wilsons to provide the documents by September 2. (Id. at 88.) On September 3, 2014, Wells Fargo informed the Wilsons that it would not offer them a loan modification because they failed to submit all requested documents. (Id. at 98-99.)

According to Wells Fargo, it discovered on September 4 that it had given the Wilsons inconsistent dates for the submission of documents. (Ferguson Decl. Ex. 1 at 6.) Thus, Wells Fargo continued to review the file. The documents did not arrive. On September 5, Mrs. Wilson contacted Wells Fargo to say that Mr. Wilson had agreed to provide information. (Id. Ex. 2 at 48.) Wells Fargo told her that it would not postpone the sheriff's sale scheduled for September 12 unless the Wilsons' application was complete. On September 9, Wells Fargo wrote again to the Wilsons saying that their application was incomplete and that no loan-modification would be forthcoming. (Def.'s App. at 100-01.)

Mr. Wilson sent Wells Fargo some information on September 10 and 11, but the Wilsons' application was still incomplete. (Ferguson Decl. Ex. 2 at 30-35.) Thus, the sheriff's sale went forward on September 12. (Def.'s App. at 106-14.) The Wilsons did

not redeem the property within the statutory six-month window for doing so. The day before the redemption period expired, Mrs. Wilson filed this lawsuit in state court. Defendants timely removed it to this Court.

The Complaint asserts violations of Minnesota's dual-tracking statute, Minn. Stat. § 582.043, and seeks specific performance that Wells Fargo comply with the terms of the statute. Plaintiff's opposition memorandum changes the specific-performance claim to one that Wells Fargo specifically perform its obligations under a consent decree it signed with the federal government in 2012. Mrs. Wilson contends that she is an intended third-party beneficiary of this consent decree and thus may seek its specific performance.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The Complaint contains four counts. Counts 1, 2, and 3 are grounded in Minnesota's dual-tracking statute, Minn. Stat. § 582.043. Count 1 contains no specific allegations other than that the foreclosure was illegal because it allegedly was in violation of subdivisions 5, 6, and 7 of § 582.043. (Compl. ¶¶ 12-18.) Count 2 claims that Wells Fargo violated subdivisions 5(2), (3), and (4) of the statute in several specific ways: by denying Plaintiff's request for a loan modification on September 3, two days before the date Wells Fargo had set for the submission of documents in support of her request for loan modification; by not giving her sufficient time to submit documents; and by failing to postpone the foreclosure during the applicable appeal period. (Id. ¶¶ 19-28.) Count 3 claims a violation of subdivision 5(5) in Wells Fargo's alleged failure to allow Plaintiff time to appeal the adverse decision. (Id. ¶¶ 29-34.) Finally, Count 4 claims that Plaintiff is entitled to specific performance ordering Defendants to comply with the terms of § 582.043. (Id. at ¶¶ 35-37.)

**A.     Dual-Tracking Statute**

**1.     Count 1**

Defendants contend that Plaintiff has failed to raise a claim that Defendants violated subdivision 6 of the dual-tracking statute. But Count 1 cites to subdivision 6, and thus her Complaint put Defendants on notice that she was relying in part on this subdivision.

Subdivision 6 provides that a servicer receiving a loan-modification application may not refer the mortgage to an attorney for foreclosure while it is reviewing the application. Minn. Stat. § 582.043, subd. 6(a). As relevant to this case, the statute also

5

provides that if a foreclosure has been scheduled and the servicer thereafter receives a loan-modification application,

> The servicer must halt the foreclosure sale and evaluate the application. If required to halt the foreclosure sale and evaluate the application, the servicer must not move for an order of foreclosure, seek a foreclosure judgment, or conduct a foreclosure sale unless:
>
> (1) the servicer determines that the mortgagor is not eligible for a loss mitigation option, the servicer informs the mortgagor of this determination in writing, and the applicable appeal period has expired without an appeal or the appeal has been properly denied.

Id. subd. 6(c).

In her opposition to the Motion for Summary Judgment, Plaintiff contends that Defendants violated this provision by not stopping the foreclosure sale after receiving her August 2014 loan-modification application, and by going forward with the foreclosure sale during the appeal period.

Defendants first argue that Plaintiff has no claim that they did not "halt" the foreclosure sale because they were entitled to hold the foreclosure sale after they denied her loan modification on September 3. This may be true, but it is also contrary to the spirit of the statute, which at least implies that a servicer must postpone a foreclosure upon receipt of a loan-modification application.

Defendants' argument regarding the appeal period is more persuasive. Wells Fargo did not offer Plaintiff an appeal because its decision was based on her failure to provide required documents. Plaintiff contends that she was entitled to appeal the adverse decision because of the federal consent decree Wells Fargo signed in 2012, which

ostensibly created a 30-day appeal period for borrowers denied a loan modification. But Plaintiff cannot enforce the requirements of this consent decree—she is not a party to it—and Wells Fargo's appeal-period commitment does not apply to this case in any event, because it applies only to complete loan-modification applications. Plaintiff does not and cannot argue that she ever submitted all of the documents Wells Fargo requested, and thus even if she could somehow enforce the consent decree, that decree's appeal period did not apply to her. Plaintiff has no claim for a violation of subdivision 6 based on an appeal period, and that portion of her claim must be dismissed.

Whether the remainder of her subdivision 6 claim survives depends on whether Plaintiff's early-August submission to Wells Fargo constitutes a "loss mitigation application" under the statute. Under the similar federal regulatory scheme, the dual-tracking requirements are triggered only with a "complete loss mitigation application." 12 C.F.R. § 1024.41. Minnesota law does not use the word "complete."

Minnesota's statute must be read to require either a complete or substantially complete loss-mitigation application in order to trigger the requirement that the foreclosure be stopped pending review of the application. If any document requesting a loan modification could be construed as a loss-mitigation application under the statute, then a borrower could stop the foreclosure process merely by sending a letter requesting a loan modification. This situation is not what the statute contemplates. The statute distinguishes between a loan-modification "request," which triggers a servicer's duty to obtain documents from the borrower, Minn. Stat. § 582.043, subd. 5(2), and a

7

loan-modification "application," which triggers the servicer's duty to evaluate the application and, as relevant here, "halt the foreclosure sale." Id. subd. 6(c). The statute's use of "request" as different from "application," and the different duties triggered by receipt of each type of document, support the Court's determination that "application" means a complete or substantially complete application.

It is undisputed that the Wilsons' application was not complete or even substantially complete within ten days of the foreclosure sale, as the statute requires. Thus, Wells Fargo did not violate the statute by going forward with the foreclosure sale.

### 2. Counts 2 and 3

To the extent that Counts 2 and 3 claim a violation of the appeal-period requirement, the above discussion applies and those claims are dismissed.

Count 2 also claims that Wells Fargo did not allow Plaintiff a reasonable time to submit documents, as subdivision 5(2) requires. But on July 22 Wells Fargo informed Plaintiff of the impending sheriff's sale on September 12. Plaintiff had more than six weeks to submit documents to Wells Fargo, and would have had even more time had she responded to Wells Fargo's first letter regarding foreclosure. Wells Fargo did not violate the statute by giving Plaintiff six weeks to submit documents.

Nor is the September 3 denial a violation of the statute. The statute requires that all documents be received at least seven business days before the scheduled foreclosure sale, and thus Plaintiffs' documents were due September 3. Wells Fargo certainly should have been more careful to ensure that it informed Plaintiff of a consistent date for the

documents' submission. But even if the differing dates violated the statute, Plaintiff was not harmed. She did not submit the documents by the first deadline Wells Fargo gave her, or even by the date of the foreclosure sale itself.

Finally, Plaintiff contends that a September 9 letter she received from Wells Fargo conceded that her loan-modification application was complete. But the letter in fact says the opposite, stating that Wells Fargo will review what Plaintiff submitted "and address any additional documents that might be needed to complete our review." (Pl.'s Ex. 1 at 26.) The letter also provides that Wells Fargo would only review the application "[a]fter we ensure that we have all the documents we need." (Id.) Wells Fargo did not tell Plaintiff that her application was complete and this claim is utterly without merit.

Plaintiff has failed to establish a claim for a violation of Minnesota's dual-tracking statute, and Counts 1 through 3 must be dismissed.

### 3. Count 4

Finally, Plaintiff seeks specific performance. As noted above, the Complaint asks that Wells Fargo be required to comply with the provisions of the dual-tracking statute, but in her opposition memorandum, Plaintiff now asks that Wells Fargo be required to comply with its obligations under the federal consent decree.

Specific performance is not a separate cause of action, but is instead an equitable remedy available only when a legal remedy is inadequate. Sheet Metal Workers' Int'l Ass'n Local 19 v. Herre Bros., Inc., 201 F.3d 231, 249 (3d Cir. 1999). Even if Plaintiff had established a violation of Minn. Stat. § 582.043, specific performance is not among the

statute's remedies.  "Specific performance is an equitable remedy which compels performance of a contract."  <u>In re Landmark Holding Co., Ltd.</u>, 286 B.R. 377, 385 (Bankr. D. Minn. 2002).  And Plaintiff is not entitled to specific performance of the 2012 consent decree.  Third parties, even if they were intended beneficiaries, are not entitled to enforce consent decrees to which they were not parties.  <u>Blue Chips Stamps v. Manor Drug Stores</u>, 421 U.S. 723, 750 (1975).  Count 4 is dismissed.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendants' Motion for Summary Judgment (Docket No. 20) is **GRANTED**; and

2. The Complaint (Docket No. 1-1) is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: <u>Thursday, July 7, 2016</u>

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge